UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW HAMPSHIRE

IMS HEALTH INCORPORATED, a Delaware )
corporation; VERISPAN, LLC, a Delaware )
limited liability company, )
 )
       Plaintiffs, ) Case No. 06-CV-280-PB
 )
vs. )
 )
KELLY A. AYOTTE, as Attorney General of )
the State of New Hampshire, )
 )
       Defendant. )
 )

Plaintiffs' Memorandum of Law
Regarding Jurisdictional Issues

Thomas R. Julin & Patricia Acosta
Hunton & Williams LLP
Fla. Bar Nos. 325376 & 614499

1111 Brickell Avenue - Suite 2500
Miami, FL 33131
305.810.2516 Fax 2460
tjulin or pacosta@hunton.com

James P. Bassett & Jeffrey C. Spear
Orr & Reno, P.A.
N.H. Bar Nos. 358 & 14938

One Eagle Square
P.O. Box 3550
Concord, NH 03302-3550
603.223.9100 Fax 9000
jbassett or jspear@orr-reno.com

Attorneys for IMS Health Incorporated & Verispan, LLC

TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................3

THE RELEVANT FACTS .....................................................................................................3

ARGUMENT..........................................................................................................................3

    I.    The Law Restricts Dissemination
        of the Prescriber-Identifiable Data in Prescription Records ..................................3

    II.   There is No Basis for the Court to Abstain..........................................................5

    III.  Plaintiffs Have Standing to Raise the
        Speech Rights of Pharmacies & Similar Entities.................................................6

    IV.  Plaintiffs Have Suffered an Injury in Fact ............................................................7

    V.   The Eleventh Amendment is No Bar to Adjudication of the Claims ................10

CONCLUSION.....................................................................................................................10

CERTIFICATE OF SERVICE .............................................................................................12

INTRODUCTION

Although the defendant has not yet raised any jurisdictional question and ultimately may not do so, every federal court has an obligation to examine its own jurisdiction. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U. S. 574, 583 (1999). Plaintiffs submit this memorandum to assist the Court with this task. The memorandum demonstrates that the Court has jurisdiction and that it should exercise that jurisdiction.

THE RELEVANT FACTS

In this lawsuit, three companies in the business of gathering prescription records that contain prescriber-identifiable data (and not patient-identifiable data), aggregating and analyzing the data, and selling the aggregated data to pharmaceutical companies for marketing purposes seek a declaratory judgment that a recently-enacted New Hampshire statute that prohibits the licensing, sale, use and transfer of prescription records containing prescriber-identifiable data for commercial purposes violates the First and Fourteenth Amendments and the Commerce Clause of the United States Constitution. They also seek a preliminary and permanent injunction against enforcement of the statute.

The language of the statute is set forth in the complaint and in the memorandum of law filed by the plaintiffs in support of their motion for a preliminary injunction.

ARGUMENT

I.

The Law Restricts Dissemination
of the Prescriber-Identifiable Data in Prescription Records

The plaintiffs challenge to the Prescription Restraint Law, 2006 N.H. Laws 328, codified as N.H. Rev. Stat. Ann. §§ 318:47-f & 318:47-g & 318-B:12, IV (2006), fundamentally is based on their conclusion that the statute imposes restrictions on the licensing, transfer, use or sale of

prescription records containing *either* prescriber-identifiable data *or* patient-identifiable data. The language of the statute restricts licensing, transfer, use or sale of "patient-identifiable *and* prescriber-identifiable data." (Emphasis added). The use of the conjunction "and" creates the possibility that the statute could be interpreted and applied so that it would have no impact on the plaintiffs because the plaintiffs do not license, accept, use or purchase *patient*-identifiable data. Their interest is in obtaining *prescriber*-identifiable data only.

The Court has a duty, of course, to avoid placing a construction on a statute that renders the statute unconstitutional if that is at all possible.[1] If plaintiffs' construction of the statute is deemed by the Court to be incorrect, plaintiffs have no standing and, indeed, no need, to bring this action.[2] In a sense then, "standing turns on an initial construction of the Act."[3] But at this preliminary stage, the Court should not interpret the Act as if it were deciding the case on the merits.[4] "Construction is the pith of this case, so interpreting a statute in the guise of standing merely permits a court to disingenuously disguise a decision on the merits."[5]

Nevertheless, the Court must make at least a determination that the plaintiffs have a reasonable fear that the statute ultimately will be interpreted to prohibit the protected expressive

---

[1] *See R.I. Ass'n of Realtors, Inc. v. Whitehouse,* 199 F.3d 26, 36 (1st Cir. 1999) ("a federal court considering a pre-enforcement challenge sometimes will presume a narrowing construction to which the law is fairly susceptible") (citing *City of Lakewood v. Plain Dealer Pub. Co.,* 486 U.S. 750, 770 n. 11).

[2] *See, e.g., Rodos v. Michaelson,* 527 F.2d 582, 585 (1st Cir. 1975).

[3] *R.I. Med. Soc'y v. Whitehouse,* 66 F. Supp. 2d 288, 302 (D.R.I. 1999).

[4] *See N.H. Right to Life Political Action Comm. v. Gardner,* 99 F.3d 8, 16 (1st Cir. 1996) ("[I]t is risky business for a district court to enter final judgment at the preliminary injunction stage"); *see also Warth v. Seldin,* 490 U.S. 500 (1975) (standing does not turn on the merits, but it often turns on the nature and source of the claim); *R.I. Med. Soc'y,* 66 F. Supp. 2d at 302.

[5] *Id.*

activity in which they plan to engage. Plaintiffs would prefer for the statute to be interpreted as *allowing* their business activities to be continued, but, candidly, they do not believe that the statute may be so interpreted. As a general matter, the word "and" is to be interpreted as conjunctive or disjunctive on the basis of the context in which it appears.[6] Statutes also should not be interpreted in a fashion that is contrary to legislative intent.[7]

If "and" were interpreted as having been used conjunctively rather than disjunctively, the statute would not operate to impose any restrictions on the sale and use of prescription records that do not contain patient-identifiable data for marketing activities directed at specific prescribers on the basis of their prescribing practices. It appears from the history of the statute set forth above that the Legislature's objective was to prohibit such sales and uses and therefore it seems certain that the word "and" is used disjunctively.

## II.

## There is No Basis for the Court to Abstain

The abstention doctrine allows a federal court to stay disposition of federal constitutional claims when the claims are based on an unsettled question of state law and disposition of that unsettled question could make disposition of the federal claim unnecessary. *R.R. Comm'n v. Pullman Co.,* 312 U.S. 496 (1941). However, abstention rarely should be invoked in cases involving facial challenges to statutes allegedly violative of the First Amendment. *Dombrowski v. Pfister*, 380 U.S. 479, 489-90 (1965) (holding abstention "inappropriate for cases [where] . . . statutes are justifiably attacked on their face as abridging free expression").

---

[6] *See generally OfficeMax, Inc. v. United States*, 428 F.3d 583, 588 (6th Cir. 2005) (holding "and" must be interpreted as conjunctive in tax legislation where such interpretation favored taxpayer).

[7] *See, e.g., United States v. Colon-Ortiz*, 866 F.2d 6, 10 (1st Cir. 1989).

Even where a state statute is challenged under the First Amendment as void for vagueness, abstention is not appropriate. *See Baggett v. Bullitt*, 377 U.S. 360 (1964) (although state courts had never construed or reviewed statute requiring loyalty oath, abstention deemed inappropriate).

The reluctance to abstain in First Amendment cases recognizes that the delay abstention imposes has a further chilling effect on speech.[8] In accordance with this principle, the First Circuit routinely has held that courts should not abstain in First Amendment cases.[9]

### III.

### Plaintiffs Have Standing to Raise the Speech Rights of Pharmacies & Similar Entities

Another potential standing issue arises because the statute is targeted at the speech of pharmacy benefits managers; insurance companies; electronic transmission intermediaries; retail, mail order, or Internet pharmacies; and "other similar entities." In *Virginia Pharmacy Board v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748 (1976), the Supreme Court held that individuals seeking information from pharmacies had standing to challenge a statute that restricted the pharmacies dissemination of certain information. "[W]here a speaker exists, as is the case here, the protection afforded is to the communication, to its source and to its recipients

---

[8] *Zwickler v. Koota*, 389 U.S. 241, 252 (1967).

[9] *See Bonas v. Town of N. Smithfield*, 265 F.3d 69, 76 n.5 (1st Cir. 2001) ("the consequences of abstention here would be too grave to accept, because the plaintiffs now do not have time, as a practical matter, to obtain the requested relief from a state court"); *Mangual v. Rotger-Sabat*, 317 F.3d 45 (1st Cir. 2003) (abstention not warranted in challenge to criminal libel statute); *Cuesnongle, O.P. v. Ramos*, 835 F.2d 1486 (1st Cir. 1987) "we heed the Supreme Court's warning that 'because of the delays inherent in the abstention process and the danger that valuable federal rights might be lost in the absence of expeditious adjudication in the federal court, abstention must be invoked only in "special circumstances"'" (quoting *Harris County Comm'rs Court v. Moore*, 420 U.S. 77, 83, (1975) (quoting *Zwickler,* 389 U.S. at 248 (1967))).

HUNTON & WILLIAMS LLP / ORR & RENO, P.A.

both. This is clear from the decided cases." *Virginia Pharmacy Board,* 425 U.S. at 757.[10] The plaintiffs here therefore have standing to challenge the restrictions placed on the entities that have been selling information to them and that wish to continue to do so.

IV.

<u>Plaintiffs Have Suffered an Injury in Fact</u>

Of course, a plaintiff "must have suffered an injury in fact -- an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical[.]" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (footnote, citations, and internal quotation marks omitted) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). "[T]here must be a causal connection between the injury and the conduct complained of" so that the injury is fairly traceable to the defendant's challenged action rather than to some third party's independent action, and it must be likely that a favorable decision will redress the injury. *Lujan*, 504 U.S. at 560. The plaintiff health information companies are themselves directly injured by the operation of the statute because it precludes pharmacies and similar entities from continuing to provide them with the basic resource that is needed for their business -- information concerning the prescribing practices of physicians.

There also must be a credible threat that the statute will be enforced. The conflict that now exists "between state officials empowered to enforce a law and private parties subject to

---

[10] *See also Lamont v. Postmaster General*, 381 U.S. 301 (1965) (First Amendment protects right of citizens to receive publications sent from abroad); *Kleindienst v. Mandel*, 408 U.S. 753, 762-63 (1972) (First Amendment protects the right to "receive information and ideas" and freedom of speech "necessarily protects the right to receive"); *Procunier v. Martinez*, 416 U.S. 396, 408-09 (1974) (censorship of prison inmates' mail abridges rights of non-inmates to whom correspondence was addressed).

prosecution under that law is a classic 'case' or 'controversy' within the meaning of Art. III."[11] The plaintiffs need not "first expose [themselves] to actual arrest or prosecution to be entitled to challenge a statute that [they claim] deters the exercise of [their] constitutional rights."[12] "Because it ordinarily will be too late to obtain a federal forum once the state has initiated criminal proceedings, *see Younger v. Harris*, 401 U.S. 37, 41 (1971), persons who are confronted by criminal laws of questionable constitutionality should be afforded recourse to the federal courts as soon as state sanctions have been threatened."[13]

"In a pre-enforcement challenge to a statute carrying criminal penalties, standing exists when 'the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the] statute, and there exists a credible threat of prosecution.'"[14]  The First Circuit has held that "in these purlieus, standing requires an 'objectively reasonable' fear of prosecution."[15]  Objective reasonableness is determined from "a frank consideration of the totality of the circumstances, including the nature of the conduct that a particular statute proscribes."[16]

In *Rhode Island Association of Realtors, Inc. v. Whitehouse*, 199 F.3d 26 (1st Cir. 1999),

---

[11] *Diamond v. Charles*, 476 U.S. 54, 64 (1986); *see also R.I. Ass'n of Realtors,* 199 F.3d at 30 (1st Cir. 1999) (citing *Diamond* and affirming grant of summary judgment for plaintiff).

[12] *Steffel v. Thompson*, 415 U.S. 452, 459 (1974);  *see also R.I. Med. Soc'y,* 66 F. Supp. 2d at 301 ("Plaintiffs in these cases need not violate the law and volunteer their heads on the chopping block").

[13] *R.I. Ass'n of Realtors*, 199 F.3d at 30 (citing *ACLU v. Fla. Bar*, 999 F.2d 1486, 1493 (11th Cir. 1993)).

[14] *Gardner*, 99 F.3d at 14 (1st Cir. 1996) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, (1979)).

[15] *R.I. Ass'n of Realtors*, 199 F.3d at 31 (citing *Gardner,* 99 F.3d at 14).

[16] *Id.*

the First Circuit held that the controversy was ripe even though the statute at issue had been on the books for two decades without enforcement because the plaintiff association alleged that it "intended to engage" in expressive activity prohibited by the statute at issue. The Court noted that "when First Amendment values are at risk, courts must be especially sensitive to the danger of self-censorship."[17] The Court reiterated that "when dealing with pre-enforcement challenges to recently enacted (or, at least, non-moribund) statutes that facially restrict expressive activity by the class to which the plaintiff belongs, courts will assume a credible threat of prosecution in the absence of compelling contrary evidence."[18]

The First Circuit noted that the statute set severe sanctions for noncompliance, that "the Attorney General had issued no statement interpreting the statute to mean anything other than what its plain language portends," that "the Supreme Court repeatedly has found standing to mount pre-enforcement challenges to laws that had never been enforced" and announced it would "emulate these examples" because "[i]t would be little short of perverse to deny a party standing because the statute she challenges is so potent that no one dares violate it, especially when the result is widespread self-censorship."[19]

In the instant case, the plaintiffs are not faced with a mature, unenforced statute, but rather one that is freshly minted and expressly targeted at the expressive activities in which the plaintiffs and their business associates engage. The plaintiffs have consulted with the assistant Attorney General present during the legislative birth process and who will be principally

---

[17] *Id. at* 31 (citing *Va. v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988), and *Meese v. Keene*, 481 U.S. 465, 473 (1987)).

[18] *R.I. Ass'n of Realtors*, 99 F.3d at 31 (quoting *Gardner,* 99 F.3d at 15).

[19] *Id.* 32-33 *(citing Am. Booksellers Ass'n,* 484 U.S. at 393; *United Farm Workers*, 442 U.S. at 302; and *Doe v. Bolton*, 410 U.S. 179, 188 (1973)).

9

responsible for enforcement of the law. He has been unable to provide any assurance that the plaintiffs would not be criminally prosecuted if they continued to engage in the purchase of prescription records reflecting prescriber-identifiable data for marketing purposes -- a practice that has been central to their business activities for many years. Like the *Rhode Island Association of Realtors* case, the controversy here is no hypothetical case.

V.

The Eleventh Amendment is No Bar to Adjudication of the Claims

The Eleventh Amendment immunizes states from damage actions in federal court, but does not create any impediment to this lawsuit. Here, the plaintiffs have sued a state official, the Attorney General, in her official capacity and they have sought solely declaratory and injunctive relief to prevent violations by her of federal law. Such suits have been expressly permitted in federal court since the early days of the Republic.[20] Plaintiffs also seek to recover under 42 U.S.C. § 1988, the costs and attorneys' fees that they have and will incur. The Supreme Court has held that claims for such ancillary relief also are not barred by the Eleventh Amendment.[21]

CONCLUSION

The Court has jurisdiction over this case and it should exercise that jurisdiction. The Prescription Restraint Law plainly prohibits the continued licensing, sale, use and transfer of prescriber-identifiable data in prescription records, it would not be appropriate to abstain from

---

[20] *See Edelman v. Jordan*, 415 U.S. 651 (1971); *Ex Parte Young*, 209 U.S. 123 (1908); *Tindal v. Wesley*, 167 U.S. 204 (1897); *Osborn v. Bank of the United States*, 22 U.S. (Wheat.) 738 (1824); *Neo Gen Screening, Inc. v. New England Newborn Screening Program,* 187 F.3d 24, 27 (1st Cir. 1999) ("the [*Ex Parte Young*] doctrine removes the Eleventh Amendment bar where the private suit is directed not against the state or a state agency *eo nomine* but instead against state officials acting in violation of federal law and where (in addition) retrospective damages or property transfers are not sought for official acts").

[21] *See Hutto v. Finney*, 437 U.S. 678 (1978).

determining the constitutionality of this restraint, the plaintiffs have standing to raise the rights of the entities directly restrained by the law, the plaintiffs are themselves injured by enforcement of the law, and the Eleventh Amendment is no bar to the adjudication of this case.

Respectfully submitted,

Hunton & Williams LLP

    Thomas R. Julin[22] & Patricia Acosta[23]
    Fla. Bar Nos. 325376 &  614599
    1111 Brickell Avenue - Suite 2500
    Miami, FL  33131
    305.810.2516 Fax 2460
    tjulin or pacosta@hunton.com

Orr & Reno, P.A.

By    /s/ Jeffrey C. Spear
    James P. Bassett & Jeffrey C. Spear
    New Hampshire Bar Nos. 358 & 14938
    One Eagle Square - P.O. Box 3550
    Concord, NH 03302-3550
    603.223.9100 Fax 9000
    jbassett or jspear@orr-reno.com

Attorneys for IMS Health Incorporated and Verispan LLC

---

[22] Assented to Motion for Pro Hac Vice Admission pending.

[23] Assented to Motion for Pro Hac Vice Admission pending.

11

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was hand-delivered July 28, 2006, to:

> The Hon. Kelly Ayotte
> Attorney General of the State of New Hampshire
> 33 Capitol Street
> Concord, NH 03301
> 603.271.3658 Fax 2110

                              /s/Jeffrey C. Spear
                                Jeffrey C. Spear